## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

---

WHITNEY ELECTRICAL INSTRUMENT COMPANY *vs.* GEORGE W. ANDERSON, assignee.

Suffolk.   June 23, 1898. — August 30, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Instructions — Exceptions — Evidence for the Jury — Agency — Conversion — Weight of Evidence.*

Where, in an action of tort for the conversion of certain personal property, it is necessary to submit the question at issue to the jury, there being evidence to support the contention of each party, and it is done in a form not objected to and the only exception taken was to certain portions of the charge, which are set forth in the bill of exceptions, and the whole charge is not reported, but it appears that other instructions not excepted to were given, it must be assumed that appropriate instructions were given if the jury should find that the defendant was acting merely as the agent of the plaintiff.

The weight of the evidence is not for this court to determine, nor is the question before it whether there is any evidence for the jury, if this is conceded.

Where a party to an action contends that on the evidence reported certain principles of law are involved, upon which the jury should have been instructed, and these do not appear in the instructions given, but it appears that the party has picked out a single paragraph of the charge to insert in the bill of exceptions, and it does not appear that he asked for any instructions, or, if he did ask for them, that they were not given, he shows no ground of exception, as instructions should have been requested.

TORT, for the alleged conversion by the assignee in insolvency of the estate of W. B. Southgate and Company, composed of W. B. Southgate and H. F. Kellogg, of certain electrical instruments.    Writ dated June 6, 1896.

At the trial in the Superior Court, before *Lilley*, J., there was evidence tending to show that the instruments, which were manufactured and owned by the plaintiff, were shipped by it to Southgate and Company, and to persons to whom Southgate and Company ordered them shipped; that at the time of the insolvency the instruments were in the possession of the insolvents, and came into the possession of the defendant as their assignee; and that there was no express agreement, oral or written, between the plaintiff and Southgate and Company as to the nature of their relations with each other, or as to the title to the instruments shipped, unless such agreement should be found in the following letter, written by the plaintiff to Southgate and Company, and dated August 31, 1895:

" We have perfected our schedule of discounts based on a sliding scale, . . . and we herewith beg to hand you our scale applicable to manufacturers and dealers, also to the consumer.    To you, as agents, we quote 10% better than to our discount to dealers through the entire scale.    This discount will go into effect the 1st of September, and will be figured on the whole month's business, the instruments being billed to you at list, and discount credited at the end of the month.    Of course it is hardly necessary for us to caution you against cutting these prices in any way, as you appreciate the importance of sustaining uniform prices fully as well as ourselves.    We believe that a careful consideration of this plan of making discounts will commend it to all, and we believe that a greatly increased business the coming season will result from its adoption.    On the attached sheet find the scale of discounts."

There was also evidence tending to show that Southgate and Company were engaged in Boston in the business of buying and selling electrical instruments and supplies of various kinds purchased by them from various manufacturers, and that the plaintiff was engaged in the manufacture of certain kinds of electrical instruments in New Hampshire; that for a long time prior to the insolvency, Southgate and Company had sent orders to the

plaintiff both to ship goods direct to themselves, and to other parties from whom Southgate and Company had taken orders; that upon the books of the plaintiff goods appeared in an account under the head of "Southgate & Co.," and that other accounts with similar headings in the books were testified by the plaintiff to be accounts for goods sold to the parties whose names therein appeared; that all the orders covering the shipments in controversy were on blanks headed "W. B. Southgate & Co., Manufacturers' Agents"; also that the letter heads used by Southgate and Company in their correspondence with the plaintiff were as follows: "W. B. Southgate & Co., Manufacturers' Agents and Dealers in Electrical Specialties & Manufacturers' Supplies"; and also that during the period covered by said shipments Southgate and Company advertised in two electrical weekly papers as selling agents of Whitney Electrical Instruments, which were the instruments manufactured by the plaintiff.

There was further evidence tending to show that an agreement had been made by which Southgate and Company had a certain discount from the list prices, varying according to the amount of goods they should order from the plaintiff.

The insolvents testified that they had had conversation and communication with the plaintiff's officers with reference to their right to sell the plaintiff's goods within a certain specified territory, and that they never had had any conversation or communication with reference to acting as the agents of the plaintiff, except as may be inferred, if at all, from the said conversation.

There was further evidence that the plaintiff was purchasing brass from the insolvents, and that on the books of both plaintiff and insolvents the brass was entered on the opposite side to that on which was the account for electrical instruments, and applied as a set-off *pro tanto;* that there had been no settlement between the parties from the time when these relations began, but that statements had been sent to Southgate and Company by the plaintiff; that shortly before their insolvency, when in business difficulties, the insolvents had a conversation with Whitney, whose exact relations to the corporation did not appear except as shown on the letter head of the plaintiff by which he was described as the "Financial Manager," in which conversation a discussion was had as to the amount of the plaintiff's claim, and

as to whether it would assent to a proposition of composition, but that no claim was made by Whitney that the plaintiff stood in any other relation to the insolvents than that of creditor. Whitney did not appear at the trial, and no witnesses were produced by the defendant to testify as to the agreement or arrangement claimed by the plaintiff to exist between it and the insolvents.

The judge submitted the case to the jury upon the following issue: "Did the plaintiffs retain the title and ownership of the instruments shipped by them to the insolvents, W. B. Southgate and Company?"

Among other instructions, to which no exception was taken, the judge gave the following:

"It must appear to your satisfaction that it was the understanding of both parties, — the Whitney Company and Southgate and Kellogg, — when the arrangements were entered into for the shipping of these goods, that the title should remain in the Whitney Company. In other words, it is all a matter of agreement, — not necessarily an express agreement, not necessarily an agreement reduced to writing, but an agreement upon which the minds of both parties met. For instance, it would not be enough to say, 'We are satisfied that the Whitney Company intended from the first to retain the ownership and title of those goods; we are satisfied of that, and hence will find that they did retain the title and ownership.' That would not be enough. There must have been, not only an intention upon the part of the Whitney Company to retain title in the goods, but there must have been also an intention upon the part of Southgate and Kellogg that they should retain title in the goods. It must appear that there was an agreement, either express or implied, between the Whitney Company and Southgate and Kellogg, by which the title in the goods that the Whitney Company shipped to Southgate and Kellogg, or to persons for whom Southgate and Kellogg obtained orders, should remain in the Whitney Company."

The jury answered the question submitted to them in the negative.

The plaintiff alleged exceptions to the above quoted instructions.

*F. A. Wyman & A. A. Wyman,* for the plaintiff.

*C. A. Reed & G. W. Anderson,* for the defendant.

LATHROP, J.   The plaintiff states in its brief the contention of each party, and says that there was evidence to support each contention.   It was necessary, therefore, to submit the question at issue to the jury.   It was done in a form not objected to. The only exception taken was to certain portions of the charge, which are set forth in the bill of exceptions.   The whole charge is not reported, but it appears that other instructions not excepted to were given.   We must assume, therefore, that appropriate instructions were given, if the jury should find that Southgate and Company were acting merely as the agents of the plaintiff. See *Lambeth Rope Co.* v. *Brigham*, 170 Mass. 518.

The plaintiff's brief is chiefly devoted to arguments on the weight to be given certain portions of the evidence which make in its favor ; but the weight of the evidence is not for us to determine.   Nor is the question before us whether there was any evidence for the jury, for this is conceded.

The plaintiff also contends that on the evidence reported certain principles of law are involved, upon which the jury should have been instructed, and that these do not appear in the instructions given.   But the plaintiff has picked out a single paragraph of the charge to insert in the bill of exceptions, and it does not appear that he asked for any instructions, or, if he did ask for them, that they were not given.   Instructions should have been requested.   See *Texas & Pacific Railway* v. *Volk*, 151 U. S. 73, 78, and cases cited.                              *Exceptions overruled.*